Briesa McClain
PO Box 580214
N. Palm Springs, CA. 92258
760-628-7941
icaresocalkids@gmail.com
Plaintiff in Pro Per

**ORIGINAL**

FILED
CLERK, U.S. DISTRICT COURT

AUG – 8 2018

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

BRIESA MCCLAIN an individual,

Plaintiff,

vs.

COUNTY OF SAN BERNARDINO, a public entity; Gregg Wielenga, in his official capacity; James Hoffman, in his individual and official capacity; Itai Estrada Sandoval, an individual; Christopher Johnston, an individual; Jordan Bernal, an individual; Greg Gary, an individual; Jody Watson, an individual; Chad Gomez, an individual; Jo Atkinson in official capacity; Autumn Bains, an individual; Prynzessin Carney, an individual; Jeffrey Moret, in his official capacity,

Defendant

Case No. **ED CV18-01648 CJC (PLA)**

**COMPLAINT FOR DAMAGES**

Claim 1: 42 U.S.C. §1983 (Unwarranted Search & Seizure; Familial Association)

Claim 2: 42 U.S.C. §1983 (Deception)

Claim 3: Monell Claim (County by CFS, County Counsel - Unwarranted Search & Seizure; Deception)

Claim 4: Monell Claim (County by Sheriff's Dept. - Unwarranted Search & Seizure; Deception)

COMPLAINT FOR DAMAGES
1

# I.
# JURISDICTION

1.      This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.

# II.
# VENUE

2.      Venue is proper to 28 U.S.C. § 1391 because this is a civil action in which the defendants are officers in San Bernardino County acting in their official capacities and substantial part of the events giving rise to this occurred in San Bernardino County, CA.

# III.
# PARTIES

3.      Plaintiff BRIESA MCCLAIN Pro Se ("Mrs. McClain" or "Mother") resides in Riverside County, CA. and at times relevant to the facts and circumstances herein, an individual that resided in the COUNTY OF SAN BERNARDINO. Mrs. McClain is the natural and biological mother of three minor children 2 boys (born in 2001 and born in 2004), and daughter Q.M (born in 2007).

4.      Plaintiff BRIESA MCCLAIN is married to Joaquin McClain who may be referred to at times as Father, Step-father, or Mr. McClain. They have lived together for over 12 years, in a joint effort in raising respectful, responsible, and successful children. They teach their children about God, love, health & safety,

COMPLAINT FOR DAMAGES
2

giving back to the community, and the importance of education. Mr. and Mrs. McClain may be referred to collectively herein as "Parents".

5. Defendant COUNTY OF SAN BERNARDINO ("SBC" or "COUNTY") is a municipality in corporate form, organized and existing under the laws of the State of California; has its governing body, protector of treasury, COUNTY COUNSEL ("CC"); and has as administrative subunits thereof the SHERIFF'S DEPARTMENT ("SBCSD"), and CHILDREN WELFARE SERVICES ("CWS") and its related unit, the DEPARTMENT OF CHILDREN AND FAMILY SERVICES (collectively referred to herein as "CFS").

6. CC, SBCSD, and CFS are county governmental agencies organized and existing pursuant to the law and policies of defendant SBC, which together with SBC, promulgated, encouraged, and/or permitted, the policies, patterns, and practices under which the individual defendants committed the acts or omissions complained of herein, and the CC, SBCSD, and CFS which condoned, ratified, and encouraged the conduct of the social worker and/or police officer defendants, as complained of herein.

7. At all times applicable herein, officer GREGG WIELENGA ("Wielenga", "Captain", "Officer"), was an individual residing, on information and belief, in the County of San Bernardino, and a Captain with SBCSD. Defendant Wielenga is sued herein in his official capacity.

COMPLAINT FOR DAMAGES
3

8.      At all times applicable herein, officer JAMES HOFFMAN ("Hoffman", "Sergeant", "Officer"), was an individual residing, on information and belief, in the County of San Bernardino, and a Sergeant with SBCSD. Defendant Hoffman is sued herein in his individual and official capacity.

9.      At all times applicable herein, officer ITAI ESTRADA SANDOVAL ("Sandoval", "Rookie", "Officer"), was an individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of SBCSD. Defendant Sandoval is sued herein in his individual capacity.

10.      At all times applicable herein, officer CHRISTOPHER JOHNSTON ("Johnston" or "Officer"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of SBCSD. Defendant Johnston is sued herein in his individual capacity.

11.      At all times applicable herein, officer JORDAN BERNAL ("Bernal" or "Officer"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of SBCSD. Defendant Bernal is sued herein in his individual capacity.

12.      At all times applicable herein, officer GREG GARY ("Gary" or "Officer"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of SBCSD. Defendant Gary is sued herein in his individual capacity.

13.    At all times applicable herein, officer JODY WATSON ("Watson" or "Officer"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of SBCSD. Defendant Watson is sued herein in his individual capacity.

14.    At all times applicable herein, officer CHAD GOMEZ ("Gomez" or "Officer"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of SBCSD. Defendant Gomez is sued herein in his individual capacity.

15.    At all times applicable herein, social worker JO ATKINSON ("Atkinson", "Supervisor", "Social Worker"), was and individual residing, on information and belief, in the County of San Bernardino, and a Supervisor with CFS. Defendant Atkinson is sued herein in her/his official capacity.

16.    At all times applicable herein, social worker AUTUMN BAINS ("Bains" or "Social Worker"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of CFS. Defendant Bains is sued herein in her individual capacity.

17.    At all times applicable herein, social worker PRYNZESSIN CARNEY ("Carney" or "Social Worker"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent,

COMPLAINT FOR DAMAGES
5

and/or employee of CFS. Defendant Camey is sued herein in her individual capacity.

18.     At all times applicable herein, Deputy County Counsel JEFFREY MORET ("Moret", "County Counsel"), was and individual residing, on information and belief, in the County of San Bernardino, and an officer, agent, and/or employee of Office of County Counsel. Defendant Moret is sued herein in his official capacity.

19.     Plaintiff re alleges, and incorporates by reference all the paragraphs above.

20.     Plaintiff is informed and believes, and thereon alleges, that the individually named defendants were decision makers in the making and/or implementation of SBC provisions with regards to the detention and arrest of Plaintiff, and removal and continued detention of Q.M. in the course of an investigation by CFS and SBCSD.

21.     Plaintiff is informed and believes, and thereon allege, that each of the named individual Defendants herein, did knowingly and willingly, with a common intent and scheme set forth in further detail herein below conspired to injure Plaintiff and to continue to deprive Plaintiff of rights, liberties, and interests in the comfort, care, and association with each other, as such rights are afforded her under the California State Constitution, and the United States Constitution,

COMPLAINT FOR DAMAGES
6

conspired generally to damage said Plaintiff and inflict great physical and/or emotional injury upon her, and did so.

22.    The above said conspiracy did include within its aim and purpose, but without limitation the unlawful malicious search and seizure of a legally registered gun, false arrest, constitutionally unreasonable and/or unwarranted removal of child Q.M. from Plaintiff's care and custody, and the continued separation of the Mother, child, and family from one another in violation of their rights of familial association pursuant to the 14th Amendment to the U.S. Constitution.

23.    Plaintiff is informed and believes and on such basis, alleges that each of the above, named defendants was acting under color of law in committing the acts herein alleged, and that in doing the things herein alleged defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

## IV.
## STATEMENT OF FACTS

24.    In the month of March 2016 Mrs. McClain and her family joyfully moved into a new place they happily called home located in Hesperia, CA. For the next several months Mrs. McClain actively worked hard to pursue and achieve life time goals, of investing into college funds, purchasing of new property, and so on, in the pursuit of happiness. Mrs. McClain and her husband Mr. McClain met over a

COMPLAINT FOR DAMAGES

7

decade back, fell in love, and agreed to become a family and raise children together. The three of Mrs. McClain's children resided in the home, with her on a fulltime basis. Mr. McClain is the biological father to the youngest child Q.M. The family also share their home with children's grandmother Darlene. **Mr. McClain and Darlene**, will be and are the **witnesses** in this case.

25.    This case arises from Violations including but not limited to; the First Amendment; Eighth Amendment; Fourth Amendment; and the Bill of Rights of the Plaintiff, a person born or naturalized in the United States. Discrimination and deprivations against the Privileges and Immunities Clause of the Fourteenth Amendment of the U.S. Constitution, stating that no state shall make or enforce any law that abridges the privileges or immunities of the citizens of the U.S. San Bernardino County (SBC) and its entities; Children Family Services (CFS), the Sheriff Dept. (SBCSD), County Counsel (CC) and its employees working in or outside of his or her regulated boundaries and participation in the warrantless search and seizure of the Plaintiff's, property and persons, abridge the privileges and immunities of civil rights, of the United States.

**Unreasonable Search Without a Warrant by Social Workers**

26.    On December 2, 2016 around 1400 hours, Mrs. McClain called her husband to inform him she will be arriving home soon. About 1430 hours San Bernardino County (SBC) Children and Family Services (CFS) social worker

COMPLAINT FOR DAMAGES
8

(SW) Bains, assisted by SW Carney, a CFS trainee shadowing Bains, to learn pattern of policies; remotely under direct supervision of Atkinson who permitted the arrival at Mrs. McClain's residence. Bains, Carney, and Atkinson were acting and or responding to an Immediate Response (IR) referral from a high school of Mrs. McClain 17, year old son, whom alleged the physical abuse. Mrs. McClain's son, a minor, will be referred to herein as M.M. (born in 2001).

27.    Trainee programs most often consist of a combination of theory and practices and are aimed at having the trainee to learn the company from the ground up.

28.    December 2, 2018 about 1430 hours Bains and Carney arrived at Plaintiff's home to inform of their interest of her son M.M.; Mr. McClain required them to identify themselves; Bains then let herself and Carney into the front gate of the yard of residence; SWs stated their names and the reason why they were there.

29.    A few minutes later Bains and Carney entered the home to further their discussion; then separated parents from one another; father inside the front of home, and mother in the master bedroom; without consent to the separation; Bains began to question both parents.

30.    Immediately upon entry, both parents witnessed Carney walking throughout the home as if she were looking for someone or something; without a

COMPLAINT FOR DAMAGES
9

warrant or consent; violating the civil and Constitutional rights of Mrs. McClain and her family. Mrs. McClain alleges that Carney unreasonably search her home because she did not have a warrant.

31.    The parents denied the physical abuse allegations and stated, if their son reported this alleged abuse it might be because he didn't want to attend U.S. Job Corps orientation, which was scheduled by his stepfather Mr. McClain. The mother also informed Bains and Carney of her son's recent delinquent behaviors. Both Parents further expressed their own belief of duties to raising a successful young man who is a (law-abiding citizen).

**Constitutionally Unreasonable Search Without Warrant by Police Officers**

32.    On December 2, 2016 around 1445 hours, San Bernardino County Sheriff Department (SBCSD) telephonically instructed Bains and Carney to exit Mrs. McClain's residence.  Both SW's as instructed, immediately exited the residence, closed the security screen door, headed towards the front of the property.

33.    Within minutes multiple SBCSD patrol cars entered onto Plaintiff's property without consent. Witnessed by the parents mentioned herein, Defendants 7-14 entered the residence without consent; did not "knock-and-announce", or identify themselves, or state the intent; the entry was constitutionally unreasonable.

COMPLAINT FOR DAMAGES
10

34.    Sergeant Hoffman, supervisor and lead investigator promulgated, with deliberate indifference, opened security screen door, and was the first SBCSD employee to unlawfully enter Plaintiff's property.

35.    SBCSD defendants 7-14 knew without doubt a structure of ordinances and procedures polices and or custom are the fundamental guideline to their duties.

36.    Under the common law knock-and-announce rule, SBCSD defendants, if executing a search warrant generally must not immediately force their way into a residence; The Supreme Court has held that the knock-and-announce rule forms part of a judge's inquiry into the reasonableness of a search under the Fourth Amendment. *See* Wilson v. Arkansas, 514 U.S. 927 (1995).

37.    About 1450 hours Mrs. McClain, under duress, was detained inside her home, by Hoffman and Johnston, separated from her husband and family. Gary and Sandoval, detained the father outside the residence. Supervisor Hoffman introduces Sandoval to parents as the Rookie.

38.    On December 2, 2016 around 1500 hours SBCSD officers, witnessed by a third party, scrutinized parents while Bernal asked Mr. McClain if SBCSD could search the residence. Mr. McClain denied consent to search.

39.    Both parents witnessed defendants 7-14, many dressed in tactical attire, rotating and/or circulating, throughout the home, condoned, encourage,

and\or participated either by monitoring, searching, encroaching and or supporting the unreasonable affirmation acts, which interfered with Plaintiff's privacy and/or abridged the privileges and immunities of her natural citizenship of the United States.

40.     Plaintiff is informed, believes, and therefore alleges, at all times that SBCSD and CFS employees acted unreasonably when they entered and searched throughout the property; Mrs. McClain had a Fourth Amendment right to be secure in her persons, houses, papers, and effects, against unreasonable searches and seizures.

**Unreasonable Seizure of Persons and Property Without Warrant**

41.     On December 2, 2016 sometime after 1500 hours Sergeant Hoffman by use of the Third Degree and the Reid technique, interrogates Mrs. McClain and her family during the child abuse investigation mentioned herein.

42.     In the Reid technique, interrogation is an accusatory process in which the investigator tells the suspect that the results of the investigation clearly indicate that they did commit the crime in question. Abuses of interrogation methods include or results in falsely accused citizens; with long and harsh questioning to obtain information or a confession.

43.     The lengthy questioning by Hoffman to the Mother consisted of *inter alia*:

COMPLAINT FOR DAMAGES

12

- Do you have a gun? What kind?  Where is it?
- Do you know how to shoot it?  Have you ever shot the gun?
- Did you know Mr. McClain has multiple violent felonies in the State of Utah including gun trafficking?
- Do you hate the police? Do you think all police kill black people?
- It hurts my heart. You probably would not believe, I adopted a black kid and raise him in my home.

44.     Mother replied with yes, I have a registered gun; husband does not have multiple felonies in Utah; no, I do not hate the police or think all police kill black people.

45.     Hoffman ordered Mother to demonstrate how to shoot her gun. She literally did so. Hoffman's use of the Reid technique to force coercion/confession and intimidation to promulgate interest of Plaintiff's property. Sergeant Hoffman ratified the warrantless search and seizure of Mrs. McClain's property and persons.

46.     The interrogation by Hoffman about Mother's legally owned gun caused Mrs. McClain to become perplexed, especially since she knew her husband was not convicted of multiple felonies in Utah, and thought SBC officials were there about her son alleged abuse. Hoffman interest was the gun.

47.     About 1510 hours Gary entered the residence and walked down the hallway towards the bedrooms, Plaintiff immediately question Hoffman of the unauthorized search.

COMPLAINT FOR DAMAGES
13

48.    Hoffman ordered the mother while under duress, undue influence, and/or coercion, without due process, travel to her bedroom and show Gary where her legally registered gun was located.

49.    On December 2, 2016 sometime prior to 1500 hours, a records check was performed by deputy Sandoval; records check informed the deputy of the identity of Mr. McClain's age, race, and location. Officers were rude and unprofessional when SBCSD employees mentioned herein, discovered the gun was legally registered and safely stored in Plaintiff's home; and the cannabis plants were legally protected by California Proposition 215 and/or the Compassionate Use Act of 1996; and as both black parents were in compliance with the law and Plaintiff had no criminal record.

50.    Sometime after the arrival of SBCSD, parents witnessed Bernal and Sandoval escort Bains and Carney into and through the home to bring awareness of cannabis being legally cultivated in the garage. Bains, Carney, Bernal, and Sandoval knew or should have known encroaching into Plaintiff's home and searching property was unreasonable.

51.    Inside the garage was a black separately built structure grow booth closed and secured. "The Curious George" curiosity inspired COUNTY entities SBCSD and CFS employees to condone, conspire, integrally participated, aid and abet each other.

COMPLAINT FOR DAMAGES

14

52.    Sandoval, Bernal, Hoffman, Bains, Carney, Gary, Watson, Wielenga, Johnston, and Gomez, with deliberate indifference unzip, unsecure, and encroach upon Mr. McClain's State of California Non-Profit Organization property, protected by Compassionate Use Act, supported by the Health and Safety Code §11362.5.

53.    Hoffman, with Bains and Carney, decision makers, informed the mother verbally and through documentation the alleged physical abuse allegations were unfounded, there were no marks or bruises on the children; and all defendants herein acknowledged the presence of the non-profit license for plants with both parents.

54.    Hoffman, Sandoval, Bains and Carney, decision makers, threatened removal of all three children from the Plaintiff's custody without a warrant, then threatened felony arrest of child abuse on both parents.

55.    Hoffman stated to Plaintiff he didn't care about presence of cannabis plants, but the matter was out of his hands, due to the presence of Bains and Carney, the children will be removed from Mother's custody and control, with Hoffman's affirmation

56.    Captain Wielenga, who was dressed in civilian clothing was abetted by Hoffman, Wielenga deliberated indifference aided, participated and condoned the removal of Mother's legally registered gun.

COMPLAINT FOR DAMAGES
15

57.     Although Captain Wielenga was informed by the Mother the gun was in fact registered to her. Wielenga intentional acquiescence nodded his head towards Hoffman, participating, encouraging, and/or permitting the removal of property from the location of the home, violating the mother's civil rights to be free from warrantless searches and seizures, and/or the right to bear arms.

58.     Meanwhile Mr. McClain was moved into the home by, Sandoval and Bernal; Mr. McClain witnessed Gary, dressed in tactical gear, holding his wife's 22 Smith and Wesson gun, and exit the residence. The husband questioned the officers around him "Why is that officer removing my wife's property? This is illegal, you have no warrant!" Sergeant Hoffman eagerly and promptly replied "we will get one."

59.     In fact, Hoffman then commands, while still under Captain Wielenga's affirmation, Johnston and Gomez, to obtain an unlawful search and seizure warrant (for the gun only) from Victorville courthouse. Johnston and Gomez, followed instructions from Sergeant Hoffman, obtained a search and seizure warrant at around 4:25 pm, the search was premature to the warrant.

60.     Johnston, Gomez and Hoffman, knew or reasonably should have known seeking a warrant in an illegal fraudulent manner under the color of law is unconstitutional, and violate public trust, this is bad and cause injury's and tremendous amount of harm to Mrs. McClain and family.

COMPLAINT FOR DAMAGES
16

61.     SBCSD employees Captain, Sergeant, including the Deputies acceptable custom with deliberate indifference to plaintiff's civil rights, integrally participated with the intentional deceptive conduct and behaviors, at all times knew or should have known of the above conduct was malicious and wrong.

## Familial Association

62.     On December 2, 2016 around 1600 hours Mother ordered SWs Bains and Carney leave her children in their home, with their grandma Darlene, Bains and Carney refused.

63.     Mother forthwith contacted her family to immediately retrieve her children.

64.     Moments later SBCSD employees Bernal and Gary forced Plaintiff and husband out of the safety of their home, physically forced handcuffs and placed in a patrol car, without a warrant, causing instant confinement and humiliation, and separating Plaintiff from her children depriving her of familial association.

65.     Shortly after 1700 hours Bains and Carney, under direct authority of CFS Supervisor Atkinson, snatched the children from their safe haven, put them in COUNTY vehicle. Grandmother Darlene who provided children's day to day care, requested explanation for the removal from SWs. Carney said they'd be back in to

COMPLAINT FOR DAMAGES
17

explain the removal of the children, defendants maliciously vanished and never returned.

66.     Darlene later told son and Plaintiff she felt lied to, tricked, mislead, and hurt, wondering why anyone would take children from 67 yr. old Grandmother and not explain why.

67.     On December 2, 2016 Mother provided CFS employees Bains and Carney with Q.M.'s aunt and cousin's name (Mattista, and Megan), phone numbers, and addresses, for emergency relative placement. Bains explained the pattern, practice, and procedure for emergency relative placement and promised Cal. Welf. & Inst. Code §361.3(a) guidelines would be followed, promising Mother CFS will call relatives that were provided.

68.     Bains lied about the above duties, CFS the decision maker, made no attempts to contact or respond back to any relatives, but instead sometime between December 2-3, 2016 abducted and hid Q.M. in a Spanish speaking foster home, limiting her ability to understand what was going on around her, separating her from family for 465 days, violating her fourteenth amendment due process rights to familial association.

69.     Defendants 15-17 premeditated conduct of a policy, practice, and/or an acceptable custom by SBC- and its entity CFS to ignored prerequisite obligations unreasonably placed Q.M. into foster care home of caregiver P.S.,

COMPLAINT FOR DAMAGES
18

without a warrant, and without giving preferential consideration for placement of Q.M. with relatives Darlene, Mattista, or Megan. Cal. Welf. & Inst. Code §361.3(a)

70.     At About 1715 hours Plaintiff and husband were taken into custody by Bernal and Gary and according to documentation arrived at High Desert Detention Center (HDDC) at 1740 hours.

71.     SBCSD defendants Gary, Bernal, and Sandoval, decision makers, individually or jointly participated in the booking of Plaintiff under a name other than her own, causing harm. Mrs. McClain was jailed for 5 days with an excessive bail amount of 100k making it impossible for family and friends to bail her out. Plaintiff was unaware of her children's whereabouts, at times Mrs. McClain feared for her life while in SBC custody.

72.     The Eighth Amendment of the United States Constitution states that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

### Deception in the Presentation of Evidence

73.     After the invasion of privacy and false arrest and/or imprisonment without a warrant, on December 2, 2016 Sandoval, Gary, Bernal, and Johnston drafted numerous SBCSD official documents and reports, including but not limited to, Suspected Child Abuse Report, Probable Cause Declaration, Warrant Affidavit,

and Uniform Crime Report (UCR). All of which are official documents prepared by SBCSD Officers and presented to the DA, Superior Court, and CFS to initiate formal criminal and juvenile proceedings. By law, the above-mentioned documents are required to be verified under penalty of perjury and must not contain false and/or untrue statements. In addition, to the extent exculpatory information exits, it is required to be disclosed to the face of the official documents.

### – *False Allegations Contained in Probable Cause Declaration*

74. On December 2, 2016 Defendant Sandoval signed the Probable Cause Declarations under penalty of perjury, and attested to the veracity of all information contained therein. After signing the declarations "under penalty of perjury," the Probable Cause Declarations were sent to the DA's office, along with the UCR and suspected child abuse report.

75. The two Probable Cause Declarations included false statements. Among other material facts, the Declarations falsely stated that, (1) Mrs. McClain's name is K. R, (2) Mrs. McClain DOB 7/5/75, (3) Father convicted of multiple felonies in California and other States, including trafficking with guns. (4) and that the garage door was unlocked or without locks. Sandoval further omitted known exculpatory evidence from the Declarations. Defendant also failed to disclose that known exculpatory information as follows: (1) Cannabis plants were in the garage concealed in a separately built structure, not in usable form, and

safely protected by CA Compassionate Use Act, licensed under the state of California, (2) gun was registered to Plaintiff Mrs. McClain, (3) Plaintiff denied consent to enter and search her property, (4) and children were removed without a warrant.

*– False Allegations Contained in Uniform Crime Report*

76.    The uniform crime report (UCR) compiles official data on crime in the United States, published by the FBI. The UCR program collects statistics on violent crime (murder and negligent manslaughter, rape, robbery, and aggravated assault) and property crime (burglary, larceny-theft, and motor vehicle theft). The matter set out in the UCR is required to be honest, accurate, and complete in all material respects.

77.    Sergeant Hoffman's investigation deemed physical abuse "unfounded"; and children were free of marks and bruises. Yet the UCR alleged Plaintiff committed felony child abuse.

78.    The UCR (drafted by Sandoval) included false statements. Including, but not limited to the following:

- The false claim that Plaintiff's children were assisting with cannabis cultivation during Officers' investigation. In truth, defendant Sandoval conclusory allegations are insufficient evidence to support such bold statements.
- The false claim that Father was a felon in possession of a firearm. In truth, Mr. McClain did not have, own, or even in control of Mrs.

COMPLAINT FOR DAMAGES
21

McClain's gun. In fact, defendant Sandoval asserted the gun was located inside the master bedroom closet of the residence, equipped with a trigger lock, and registered to Mrs. McClain.

- The false claim that no physical evidence was recovered. In fact, defendant Bernal on December 2, 2016 asserted on the UCR, the Smith & Wesson .22 caliber was taken and booked at the Hesperia Station. In fact, defendant Johnston on January 24, 2017 swore the Plaintiff's gun is retained in his custody.

79. Defendant Bernal also made false statements in the UCR. Including, but not limited to the following:

- The false assertion that defendant Bernal served a search warrant. In truth, defendants 7-14 entered and searched Plaintiff's residence without consent or presenting a warrant. In fact, defendant Bernal asserted Mr. McClain denied consent to search premises.

80. Pursuant to Cal. Penal Code §1535 when an officer takes property under a warrant, he must give a receipt for the property taken to the person from whom it was taken, or leave it in the place where he found the property.

81. At the time defendants Sandoval and Bernal blatantly created their UCR under penalty of perjury, from de novo, had no basis in the evidence to support the above indicated false statements.

82. In addition, Sandoval and Bernal omitted known exculpatory evidence from their UCR. Including but not limited to the following:

- Presence of the cannabis in question was both legal and authorized under State law, not in usable form, and was not seized by law enforcement.
- Search and seizure warrant was never presented to Plaintiff, and no receipt given for property seized.

COMPLAINT FOR DAMAGES

22

- Mrs. MCCLAIN's gun was legally registered and plaintiff has no criminal record.
- Mr. MCCLAIN was not in possession of any weapons.
- SBCSD individual defendants did not possess a warrant during the entry and search of Plaintiff's residence.
- Presence of SMASH team was due to the speculation that Father was a black male, who had an illegal marijuana grow, and illegal firearms. In truth, defendants 7-14 discriminatory conduct included the continued assertions that Mr. and Mrs. McClain were police haters, plausible cop killers, that think all police kill black people ad nauseam.

83.     Prior to December 6, 2016, Sandoval sent the UCR and Declarations to the State of California District Attorney (DA), it was considered, and the UCR was accepted into evidence. The DA considered and relied upon false, inaccurate, and incomplete statements contained in the UCR and Declarations. Based on the false and materially incomplete information before it, the DA filed criminal charges against Mrs. McClain.

*– False Allegations Contained in Search Warrant and Affidavit*

84.     Prior to signing the Search Warrant and Affidavit on December 2, 2016, defendant Johnston did not conduct a reasonable investigation to determine the truth or veracity of the factual statements he set out in the Affidavit. Johnston was present at the times of the unlawful entry and searched of Plaintiffs' property and seizure of Mrs. McClain's property and created the factual allegations that he attested to under penalty of perjury with personal knowledge of the facts.

COMPLAINT FOR DAMAGES

23

85.    On December 2, 2016 Johnston swore under oath on the Search Warrant and Affidavit and attested to the veracity of all information contained therein. After signing the Affidavit and "swearing under oath," the Search Warrant and Affidavit was presented to Magistrate judge, that information will be available during discovery.

86.    The Search Warrant and Affidavit included fraudulent statements. Among other material facts, the Affidavit fraudulent stated that, (1) Mrs. McClain's gun was used as a means of committing a felony, (2) Plaintiff had committed a felony, (3) the gun "would be" located at the place "to be" searched. Johnston further omitted known exculpatory evidence from the Affidavit. Johnston also failed to disclose the known exculpatory information as follows (1) the premature search commenced prior to requesting the warrant (2) the request for warrant to search Plaintiff's residence was for a legally registered gun and request was made after the seizure of gun, (3) Plaintiff did not give consent to search residence.

87.    Pursuant to Cal. Penal Code §1534(a) A search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void.

COMPLAINT FOR DAMAGES
24

88.     Q.M. was removed and separated from her parent's custody and care, defendants Bains, Atkinson, and SBC, County Counsel (CC) Moret, CFS continued to detain, abduct, hide, and/or kept Q.M. against her well away from home and parents; or caused Q.M. to continue to be detained, abducted, hid, and/or kept away, from Plaintiff's care, even when defendants knew there was no basis to do so.  As a result, Q.M. was removed from her home schools without consent and/or notifying Parents or the school. Q.M. remained out of Plaintiff's custody, care, and control, and was hidden in a Spanish speaking foster home of Paula, S, limiting her ability to understand what's going on around her for 465 days, sometime after March 11, 2018.

*– False Allegations Contained in the Dependency Petition*

89.     On December 6, 2016 Defendant Bains signed the Juvenile Dependency Petition ("Petition") for Q.M. The "Petition" is an official document prepared by CFS and filed with the juvenile court to initiate formal juvenile dependency proceedings. By law, the Petition is required to be verified under penalty of perjury and must not contain false and/or untrue statements. In addition, to the extent exculpatory information exits, it is required to be disclosed to the juvenile court on the face of the petition.

90.     Prior to signing the Petition, Bains did not conduct a reasonable investigation to determine the truth or veracity of the factual statements she set out

COMPLAINT FOR DAMAGES
25

in the Petition. Bains was present at the time of the seizure and created the factual allegations that she attested to under penalty of perjury without personal knowledge of some of the facts.

91.  On December 6, 2016 Defendant Bains signed the Petition under penalty of perjury, and attested to the veracity of all information contained therein. After signing the petition "under penalty of perjury," the Petition was filed with the juvenile court.

92.  The Petition included false statements. Among other material facts, the Petition falsely stated that, (1) Mother "has" a history of substance abuse, causing neglect (2) Q.M. has or will suffer serious physical harm or illness as a result of Mother's failure or inability to protect children from the close access of a cannabis grow, (3) Q.M. had been left without any provision of support, (4) and Plaintiff used inappropriate discipline including but not limited to "socking and punching." Bains further omitted known exculpatory evidence from the Petition. Bains also failed to disclose that known exculpatory information as follows: (1) The plants, were concealed in a separately built structure, in non-usable form, and protected by CA Compassionate Use Act. (2) Parents promptly and voluntarily tried to dispose plants, and law enforcement did not seize any of the plants (3) Q.M.'s grandmother lived in the home and was present, willing, and able to provide care and support for Plaintiff's child.

*– False Allegations Contained in the Detention Report*

93.    Defendant Bains drafted the Detention Report for Q.M. "Detention Report" is an official document that is filed with the juvenile dependency court in advance of the Detention Hearing. The Detention Hearing is generally the first hearing that takes place in a juvenile dependency action – it is akin to an arraignment in criminal proceedings. The matter set out in the Detention Report is required to be honest, accurate, and complete in all material respects. Known exculpatory evidence is also required to be set out on the face of the Detention Report.

94.    On December 6, 2016 defendants Bains and supervisor Atkinson with deliberate indifference signed the Detention Report "under penalty of perjury," and attested to the veracity of all information contained therein.

95.    Detention Report alleged Parents home was clean, and law enforcement deemed physical abuse "unfounded", and children were free of marks and bruises. Yet the Report also alleged that there was no way to alleviate the unspecified risk to Plaintiff children.

96.    The Detention Report included false statements. Including, but not limited to the following:

- The false claim that Plaintiff did not provide sufficient information regarding relatives for placement consideration. In truth, Plaintiff gave

COMPLAINT FOR DAMAGES

27

Bains relatives' names, phone numbers, and addresses during prior to the warrantless seizure.

- Bains falsely asserted that there were no caretakers at the time of removal to provide for Q.M. basic needs. In truth, grandmother Darlene was present in the home at the time Q.M. was taken from her home without a warrant.
- The false claim that reasonable efforts had been made to avoid the removal of Plaintiff's daughter.
- The false claim that Plaintiff daughter was in close access to and being exposed to cannabis (e.g. smoke) placed child at risk of serious harm or injury. In fact, there's no allegations of any cannabis in usable form, Bains asserted that the immature plants were in the building where cars are kept (not inside the home), and were revealed once "unzipped". Defendant Bains falsely asserted there were no locks on the door to the garage. In truth, defendant Bains conclusory allegations are insufficient evidence to support such bold statements.
- The false claim that Mother "has" a history of substance abuse.
- The false claim that both parents were properly notified of detention hearing, as required by law.

97.    At the time defendants Bains and supervisor Atkinson signed their detention report under penalty of perjury, they had no basis in the evidence to support the above indicated false statements, and in fact knew the truth of the matters but elected to refrain from reporting the true state of affairs to the Juvenile Court in Detention Report.

98.    In addition, Bains and Atkinson omitted known exculpatory evidence from their Detention Report. Including but not limited to the following:

- Bains and Carney removed Q.M. without a warrant, absent exigent circumstances.

COMPLAINT FOR DAMAGES

28

- Presence of the cannabis in question was both legal, not in usable form, protected and authorized under State law, and was not seized by law enforcement.
- Mr. McClain's mother Darlene lives in the home with family, provided Q.M.'s day to day care, and was present at the time Plaintiff was being arrested without a warrant.
- Mr. McClain promptly, voluntarily, and repeatedly sought to dispose plants to prevent CFS from removing Q.M. from her home.
- Parents provided Bains, Mattista and Megan contact information for emergency relative placement.

99.    December 7, 2016, at the Detention Hearing, defendants Bains, Atkinson, and County Counsel Moret presented the Petition, it was considered, and the Detention Report was accepted into evidence. The juvenile court considered and relied upon false, inaccurate, and incomplete statements contained in the Petition and Detention report. Based on the false and materially incomplete information before it, the juvenile court ordered that Q.M. would continue to be detained from the custody of parents, and placed in foster homes.

100.    Detention hearing December 7, 2018 was held absent Parents. Plaintiff is informed and believes, and thereon alleges, that the SBC Juvenile Court and Victorville Superior Court knew Parents were in custody at High Desert Detention Center (HDDC) and West Valley Detention Center (WVDC). Mrs. McClain alleges that plaintiff and father were deprived inmate services. Unable to fight for the right of her children; Plaintiff felt robbed of her dignity.

COMPLAINT FOR DAMAGES
29

101.   Mrs. McClain, on the evening of December 7, 2016 was released from WVDC. Plaintiff promptly called M. McClain and was informed relative did not know Q.M.'s location. Plaintiff left a message for Bains that evening and again the next morning.

102.   December 8, 2016 about 1000 hours SBC Juvenile dependency court was well aware of the relatives of Plaintiff and Q.M. Plaintiff introduced court appointed counsel to her cousin M. Schwartz. Counsel informed Mother that Q.M. would remain in foster care. Plaintiff informed that COUNTY officials did not have a warrant to remove her daughter; and the dependency petition was incorrect; asked why are her child being deprived from parents and relatives. Counsel had no verbal explanation, was sympathetic, yet body language displayed a message of turning of the blind eye.

103.   On December 7- 8, 2016 deputy county counsel Moret was Joinder during the court, when records show no social worker assign to case, order same day drug testing for Plaintiff, Q.M. continue to be detained in foster care, then outrageously ruled, on the record, there are not relatives able and willing to provide a temporary home for Q.M. At this point Parents were horrified. Family was there in court! SBC, CC, Moret, CFS, Roca,

104.   Although Q.M. was continually separated from Plaintiff and family for 465 days, immediately upon the transfer to the County of Riverside Q.M. was

returned to her parents care and full custody, and juvenile dependency court eventually dismissed the case June 25, 2018.

105.    On August 29, 2017 CA PC 1538.5 Motion to suppress evidence hearing was granted in Mrs. McClain's favor and all criminal charges including child cruelty charges were dismissed in the SBC Sovereign Court of Victorville, CA.

106.    Plaintiff has not obtained the complete Juvenile Case Files for Q.M. Therefore, the foregoing recitation of misrepresentations and suppressions are exemplary in nature, and alleged with reservation of the right to introduce additional evidence of misrepresentation and suppression at time of trial, based on new interpretation or information uncovered during the Cal. Welf. & Inst. Code, §827 proceedings and/or discovery process.

## V.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42. U.S.C § 1983)
## COUNT 1
*(Unreasonable Search – Search Without a Warrant and Invasion of Privacy –*
*Under Color of Law - in Violation of Plaintiff's Fourth Amendment Rights)*
**By Plaintiff Briesa McClain Against Defendants Wielenga, Hoffman, Johnston, Sandoval, Bernal, Gary, Watson, and Gomez (referred to**

COMPLAINT FOR DAMAGES
31

collectively as defendants 7-14; Defendants Bains and Carney, inclusive)

107.    Plaintiffs re allege, and incorporates by reference all of the paragraphs above.

108.    Plaintiff along with minor are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

109.    Plaintiff is informed and believes and thereon alleges that the Fourth Amendment to the United States Constitution, Bill of Right, prohibits unreasonable searches. Plaintiff also alleges that the Right to Privacy is the right not to have one's personal matters disclosed or publicized; the right to be left alone; and the right against undue government intrusion into fundamental personal issues and decisions; and that the purpose of the Bill of Rights is to provide specific freedoms to citizens and limit the power of government.

110.    On December 2, 2016 SBCSD employee Defendants 7-14 and CFS employee Defendants Bains and Carney searched Plaintiff's house; they did not have a warrant; and they were acting or purported to act in the performance of his/her official duties. Plaintiff had a reasonable expectation of privacy in her home; Defendants 7-14, Bains, and Carney intentionally intruded in Plaintiff's house and garage, searched throughout rooms, and unzipped a secured grow booth that was in the garage and protected by State law; and Defendants 7-14, Bains and Carney's intrusion would be highly offensive to a reasonable person. None of these Defendants, who were present at the time of search obtained nor sought to obtain a

COMPLAINT FOR DAMAGES
32

search warrant prior to entering and searching the Plaintiff's house; without consent or probable cause. Defendants were deliberately indifferent to the likely consequence that Plaintiff's property would be searched unlawfully and privacy invaded. The intrusion was not reasonable or necessary.

111. This wouldn't have happened if the individually named defendants were not the decision makers in the making and/or implementation of SBC provisions on December 2, 2016.

112. Defendants and each of them, acting under color of his/her authority gives rise to a cause of action for damages consequent upon his/her unconstitutional conduct.

113. As a direct and proximate result of these defendants' misconduct, Plaintiff has suffered, and will continue to suffer general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things; extreme emotional and physical distress, including but not limited to fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation, and indignity.

## COUNT 2

*(The Unwarranted Seizure of Q.M. - Under Color of Law - in Violation of Plaintiff's Fourteenth Amendment Right to Familial Association)*
**By Plaintiff Briesa McClain Against Defendants Wielenga, Hoffman, Johnston, Sandoval, Bernal, Gary, Watson, and Gomez (referred to**

**collectively as defendants 7-14); Defendants Bains, Carney, and Atkinson, inclusive**

114.    Plaintiff along with minor is individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

115.    Plaintiff is informed and believes and thereon alleges that the right to familial association guaranteed under, without limitation, the First, Fourth, and Fourteenth Amendments is "clearly established" such that a reasonable Police officer and/or social services agent in Defendants' situation would know it is unlawful to remove a child from the care, custody, and control of its parents unless they have "reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." Rogers v. Cty. Of San Joaquin, 487 F3d 1288, 1294 (9th Cir. 2007); Cal. Welf & Inst. Code § 305(a); Wallis ex rel. Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 1999). Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury.

116.    Plaintiff brings this action on her own behalf to recover damages arising from the defendants' violation of her right to continued care, custody, and control of her daughter Q.M. arising under the Fourteenth; and her right to be

COMPLAINT FOR DAMAGES
34

secure in her persons, houses, papers, and effects, against unreasonable seizures arising under the Fourth Amendment to the United States Constitution. Plaintiff does not bring this action on behalf of Q.M. or to recover any damages for constitutional injuries inflicted on Q.M. whose rights arising under the Fourth Amendment to the United States Constitution are not implicated in this action.

117.  On December 2, 2016 CFS employee Defendants Bains and Carney removed Q.M. from Plaintiff's custody without a warrant; and Defendants Bains and Carney were performing or purporting to perform their official duties.

118.  On December 2, 2016 CFS employee Defendants Bains and Carney unlawfully seized and/or abducted Q.M. absent information that established reasonable cause at the time of seizure to believe that minor was in imminent danger or serious bodily injury; maliciously and/or corruptly persuaded encroachment on the privacy of the Plaintiff's home.

119.  On December 2, 2016 SBCSD employee Defendant Hoffman stated he didn't care about presence of cannabis plants, and the matter was out of his hands, due to the presence of CFS Bains and Carney; Q.M. will be removed from Parents' custody for "general" neglect due to Q.M. having close access to cannabis not in usable form, that were secured and protected by State law; without a warrant. Defendants Atkinson, Hoffman, Bernal, and Sandoval and each of them, knew, agreed with, and supported the December 2nd conduct of Defendants Bains

and Carney, and thereby collaborated, acted, and conspired to violate Plaintiff's civil rights.

120.    Defendants were deliberately indifferent or had a reckless disregard to the likely consequence that Q.M. would be seized unlawfully, and deprive Plaintiff of life, liberty, and/or property without due process of law.

121.    On December 2, 2016 SBC employee Defendants Bains, Carney, Hoffman, Sandoval, Bernal, and Gary imposed constraint and deprivations of familial association. Plaintiff was unable to resume to her normal everyday life, which injured Plaintiff, to be detained and deprived from leaving her home. Defendants Wielenga, Gomez, Johnston, Watson and Atkinson and each of them, knew, agreed with, and supported the December 2nd above mentioned conduct of Defendants Bains, Carney, Hoffman, Bernal, and Gary thereby collaborated, acted, and conspired to violate Plaintiff's civil rights.

122.    Supervisors Wielenga, Hoffman, and Atkinson with deliberate indifference, failed to act during the December 2, 2016 intrusion into Plaintiff's privacy and deprivation of familial association.

123.    This wouldn't have happened if the individually named defendants were not the decision makers in the making and/or implementation of SBC provisions on December 2, 2016.

124.   Defendants and each of them, acting under color of his/her authority gives rise to a cause of action for damages consequent upon his/her unconstitutional conduct.

125.   As a direct and proximate result of these defendants' misconduct, Plaintiff has suffered and continue to suffer actual and potential injury to her health and safety and is entitled to compensatory damages for her property and other injury to her persons. Plaintiff has suffered, and will continue to suffer from emotional distress including, but not limited to, confinement, loss of sleep, fright, sickness, humiliation, sorrow, and turmoil; and resulted in loss of wages, loss of productivity, impoverishment, physical, mental, and emotional injury, to an extent and in an amount subject to proof at trial. Nobody, including Plaintiff, could reasonably be expected to endure the types of affront inflicted upon Plaintiff without sustaining the type of damages herein alleged. Plaintiff has also incurred, and will continue to incur, attorney/legal fees, costs and expenses, to an extent and in an amount subject to proof at trial.

## COUNT 3

*(Unlawful Arrest by Peace Officer Under Color of Law Without a Warrant in Violation of Plaintiff's Fourth and Fourteenth Amendment Rights; Familial Association; False Imprisonment)*

**By Plaintiff Briesa McClain Against Defendants Wielenga, Hoffman, Johnston, Sandoval, Bernal, Gary, Watson, and Gomez, inclusive**

COMPLAINT FOR DAMAGES

37

126.   Plaintiffs re allege, and incorporates by reference all of the paragraphs above.

127.   Plaintiff along with minor are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

128.   Unlawful Arrest; False Imprisonment. "'[F]alse arrest' and 'false imprisonment' are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology." (Collins v. City and County of San Francisco (1975) 50 Cal.App.3d 671, 673 [123 Cal.Rptr. 525].) A person is liable for false imprisonment if he or she "'authorizes, encourages, directs, or assists an officer to do an unlawful act, or procures an unlawful arrest, without process, or participates in the unlawful arrest. . .'" (Du Lac v. Perma Trans Products, Inc. (1980) 103 Cal.App.3d 937, [163 Cal.Rptr.335], internal citation omitted.) Such aiding and abetting breach of fiduciary duty and/or obstruction of justice and/or done with prejudice and discrimination violates the substantive due process clause, bill of rights.

129.   Plaintiff claims that on December 2, 2016 SBCSD employee Defendant Sandoval read Plaintiff Miranda Rights; arrested Plaintiff without a warrant and without probable cause; Sandoval was acting or purporting to act in the performance of his official duties.

COMPLAINT FOR DAMAGES
38

130.  Plaintiff claims that on December 2, 2016 SBCSD employee Defendants Bernal and Gary placed Plaintiff in handcuffs and transported her to HDDC; arrested Plaintiff without a warrant; Bernal and Gary were acting or purporting to act in the performance of his official duties.

131.  Plaintiff claims that on December 2, 2016 SBCSD employee Defendant Hoffman knowingly gave Defendants Wielenga and Sandoval false or materially incomplete information, of the character of Plaintiff expecting to stimulate the unlawful arrests.

132.  Plaintiff claims that on December 2, 2016 SBCSD employee Defendants Wielenga, Hoffman, Johnston, Gomez, Gary, Bernal, and Watson authorized, encouraged, directed, or assisted Sandoval to unlawfully arrest Plaintiff; or procure the unlawful arrest without process; or participated in the unlawful arrest of Plaintiff without a warrant. Which caused the separation of Plaintiff and child without due process of law.

133.  Plaintiff claims that Wielenga and Hoffman, with deliberate indifference, failed to act during the arrest of Plaintiff without a warrant and without probable cause; Wielenga and Hoffman was acting or purporting to act in the performance of their official duties.

134.  Plaintiff claims that Gary, Bernal, and Sandoval wrongfully caused a criminal proceeding to be brought against her. Gary, Bernal, and Sandoval were

COMPLAINT FOR DAMAGES

39

actively involved in causing Mrs. McClain to be prosecuted or in causing the continuation of the prosecution, the criminal proceeding ended in Mrs. McClain's favor; that no reasonable person in Gary, Bernal, and Sandoval circumstances would have believed that there were grounds for causing Mrs. McClain to be arrested or prosecuted; that Gary, Bernal, and Sandoval acted primarily for a purpose other than to bring Mrs. McClain to justice; that Mrs. McClain was harmed; and that Gary, Bernal, and Sandoval conduct was a substantial factor in causing Mrs. McClain's harm. On August 29, 2017 all criminal charges against Plaintiff were dismissed.

135.   Defendants and each of them, acting under color of his/her authority gives rise to a cause of action for damages consequent upon his/her unconstitutional conduct.

136.   This wouldn't have happened if the individually named defendants were not the decision makers in the making and/or implementation of SBC provisions on December 2, 2016.

137.   As a direct and proximate result of these defendants' misconduct, Plaintiff has suffered injuries and will continue to suffer. This intentional infliction was the direct and proximate cause of Plaintiff's emotional distress including, but not limited to, confinement, loss of sleep, fright, sickness, humiliation, sorrow, and

turmoil; and resulted in loss of wages, loss of productivity, impoverishment, and suffered deprivations of Plaintiff's rights, familial association, and civil liberties.

138.    The wrongful and despicable conduct of Police Defendants, and each of them, as herein alleged was intentional, done with malice, oppression, or fraud, with a callous or reckless indifference to the rights of Plaintiff, or motivated by an evil intent. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing said Police Officers, and to deter them and others from such conduct in the future.

## SECOND CLAIM FOR RELIEF

### FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42. U.S.C § 1983)
*Violation of Plaintiff's Due Process Right to Be Free from Deception in the Presentation of Evidence to the Superior Courts – Under Color of Law*
### COUNT 1
**(By Plaintiff Briesa McClain Against Defendants Wielenga, Hoffman, Johnston, Sandoval, Bernal, Gary, Watson, and Gomez (referred to collectively as defendants 7-14), inclusive)**

139.    Plaintiffs re allege, and incorporates by reference all of the paragraphs above.

140.    Plaintiff along with minor are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

141.    At all times relevant herein, there existed a clearly established due process right of individuals not to be subjected to false accusations by government

COMPLAINT FOR DAMAGES
41

officials, including the deliberate presentation of false or perjured evidence, and/or by the suppression of exculpatory information in court proceedings or in documents submitted with recommendations or requests made to the courts. Any reasonable police officer and/or government would know that it is due process violation to lie, exaggerate, fabricate evidence, and/or suppress material exculpatory evidence in court reports and other documents filed with the Superior courts, and/or relied upon by subsequent police officers and/or social workers.

142.    Defendants Hoffman, Johnston, Gomez, Gary, Bernal, Sandoval, and each of them, had the affirmative and self-evident duty to be truthful, accurate, and complete in reports and other documents submitted to the superior courts – courts with power to adjudicate substantial rights, including legal and custodial rights of children and parents, and privacy rights. Similarly, defendants had an equal duty to refrain from using improper and deceptive means to obtain search warrants and/or judicial orders sustaining recommendations disparaging and/or otherwise impairing or impinging upon Plaintiff's due process rights.

143.    Defendants Hoffman, Johnston, Gomez, Gary, Bernal, Sandoval, each of them, either singularly or jointly acted, and/or conspired, to deliberately or recklessly present false statements and/or omit known exculpatory omissions material in the Suspected Child Abuse Report, Probable Cause Declaration, Warrant Affidavit, and Uniform Crime Report (UCR) filed in the Superior Courts.

COMPLAINT FOR DAMAGES

42

This deceptive conduct caused Plaintiff's malicious prosecution, and the continued and prolonged detention of Plaintiff in SBC HDDC and WVDC.

144.   Defendants Hoffman, Johnston, Gomez, Gary, Bernal, and Sandoval, were acting under color of state law when they jointly acted, agreed, and/or conspired to violate Plaintiff's constitutional rights by, but not limited to, engaging in deception in the presentation of evidence to the Superior courts.

145.   As a direct and proximate consequence of this violation, Plaintiff has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

146. Defendants Hoffman, Johnston, Gomez, Gary, Bernal, Sandoval acted intentionally and/or with a conscious disregard for Plaintiff's constitutional rights. As a result of this conduct, Plaintiff is entitled to recover punitive damages against these individual defendants.

## COUNT 2

### (By Plaintiff Briesa McClain Against Defendants Bains, Atkinson, and Moret, inclusive)

147.   Plaintiffs re allege, and incorporates by reference all of the paragraphs above.

148.   Plaintiff along with minor are individuals and citizens of the United States, protected by 42 U.S.C. § 1983.

COMPLAINT FOR DAMAGES
43

149. At all times relevant herein, there existed a clearly established due process right of individuals not to be subjected to false accusations by government officials, including the deliberate presentation of false or perjured evidence, and/or by the suppression of exculpatory information in court proceedings or in documents submitted with recommendations or requests made to the courts. Any reasonable social services agent, and/or government would know that it is due process violation to lie, exaggerate, fabricate evidence, and/or suppress material exculpatory evidence in court reports and other documents filed with the juvenile courts, and/or relied upon by subsequent social workers.

150. Defendants Bains, Atkinson, and Moret, and each of them, had the affirmative and self-evident duty to be truthful, accurate, and complete in petitions and reports submitted to the juvenile courts – courts with power to adjudicate substantial rights, including legal and custodial rights of children and parents. Similarly, defendants had an equal duty to refrain from using improper and deceptive means to detain children or continue to detain children and/or obtain judicial orders sustaining recommendations disparaging and/or otherwise impairing or impinging upon Plaintiff's due process rights.

151. Defendants Bains, Atkinson, and Moret, each of them, either singularly or jointly acted, and/or conspired, to deliberately or recklessly present false statements and/or omit known exculpatory material in the Juvenile

COMPLAINT FOR DAMAGES
44

Dependency Petition and/or reports filed in the Juvenile Court. This deceptive conduct caused Q.M.'s continued and prolonged detention from Plaintiff's care, custody, and/or control.

152.    Defendants Bains, Atkinson, and Moret were acting under color of state law when they jointly acted, agreed, and/or conspired to violate Plaintiff's constitutional rights by, but not limited to, engaging in deception in the presentation of evidence to the Juvenile court.

153.    As a direct and proximate consequence of this violation, Plaintiff has suffered, and will continue to suffer, damages, including but not limited to, physical and/or mental anxiety and anguish according to proof at trial.

154.    Defendants Bains, Atkinson, and Moret acted intentionally and/or with a conscious disregard for Plaintiff's constitutional rights. As a result of this conduct, Plaintiff is entitled to recover punitive damages against these individual defendants.

## THIRD CLAIM FOR RELIEF
### FOR *MONELL*-RELATED CLAIMS
### COUNT 1
*(For Unwarranted Search and Seizure by County Social Workers; Due Process Violations by Social Workers and Deputy County Counsel)*
By Plaintiff Briesa McClain Against County of San Bernardino; County Counsel; CFS Social Worker Defendants, inclusive

155.   Plaintiffs re-allege, adopt. and incorporates as if set forth at length, and to the extent applicable, paragraphs 1 through 106.

156.   Defendant COUNTY OF SAN BERNARDINO, including through its CHILD WELFARE SERVICES AGENCY, CFS, and the Office COUNTY COUNSEL entities, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability. *Monell v. Dept. of Social Services* (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

157.   Defendant County of San Bernardino, including through its entity CFS and County Counsel and those Defendants sued in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed to Plaintiff under the United States Constitution, including those under the First, Fourth, and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; the right to be free of governmental deception, trickery, fabrication of evidence, and suppression of exculpatory evidence in juvenile dependency proceedings; and the right to procedural due process. Said defendants also had a duty to use reasonable care to select, assign,

COMPLAINT FOR DAMAGES
46

supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within CFS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

158. Moreover, based on the duties charged to the social worker and county counsel defendants, including the responsibility, to present evidence and recommendations to the juvenile court – a court with power to adjudicate substantial rights, including legal and custodial rights of children and parents.

159. Plaintiff brings this action on her own behalf to recover damages arising from the County of San Bernardino's violation of her right to continued care, custody, and control of her daughter Q.M. arising under the First and Fourteenth; and rights to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures arising under the Fourth Amendment to the United States Constitution. Plaintiff does not bring this action on behalf of Q.M., or to recover any damages for constitutional injuries inflicted on Q.M., whose rights arising under the Fourth Amendment to the United States Constitution are not implicated in this action.

160. Plaintiff is informed and believe and thereon allege that as the Director of CFS, Marlene Hagen, was at all times relevant herein, possessed of

COMPLAINT FOR DAMAGES
47

final policymaking authority in that the County Board of Supervisors delegated such power and responsibility to them, including but not limited to the responsibility to set policies and priorities for CFS and the supervision and management of staff performing all child welfare services.

161. Based on the duties charged to County of San Bernardino, including the nature of its work relating to juvenile dependency proceedings, County of San Bernardino and Marlene Hagen knew or should have known of the obvious need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children.

162. Defendant County of San Bernardino established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by the SW, police officer, and CC defendants, when they violated Plaintiffs' constitutional rights by engaging in deception in the presentation of evidence to the SBC courts, among other things.

163. In addition, Defendant County of San Bernardino established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by the SW and CC defendants, when they violated Plaintiffs' constitutional rights by continuing to detain Q.M. and/or by causing Q.M. to continue to be detained from Plaintiffs' custody when it was known that there was no basis to do so.

COMPLAINT FOR DAMAGES
48

164. Defendant County of San Bernardino, including through its entities CFS and County Counsel, established and/or followed policies, procedures, customs, and/or practices which policies were the moving force behind the violations of Plaintiff's constitutional rights, including those under the Fourth and Fourteenth Amendments, by, but not limited to:

- The policy, custom, and/or practice of detaining and/or removing children from the custody of their parents in the absence of exigent circumstances (immediate danger of serious bodily injury), without first obtaining a court order/warrant and/or first obtaining consent of the child's parent;
- The policy, custom, and/or practice of removing children from their family and their homes without first engaging in, performing, and/or pursuing any and/or reasonable investigation, and then only investigating allegations of abuse, after the unwarranted seizure is *fait accompli*;
- The policy, custom, and/or practice of removing children from their parent's custody without consent, court order, and/or exigency, based on a hope that further investigation could turn up facts suggesting the seizure was justified;
- The policy, custom, and/or practice of removing children from their parent's custody without consent, court order, and/or exigency, based purely on speculative harm;
- the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;
- The policy, custom, and/or practice of seizing a child from the custody of its parents – without judicial authorization or parental consent – when cannabis, not in usable form, and is protected by the CA Compassionate Use Act and supported by Health and Safety Code §11362.5.

COMPLAINT FOR DAMAGES
49

- The policy, custom, and/or practice of removing a child from the custody of its parent(s) – without judicial authorization or parental consent – due to children in close access to cannabis cultivation protected by CA Compassionate Use Act and supported by Health Safety Code §11362.5.
- The policy, custom, and/or practice of including false, inaccurate, exaggerated, misleading, and/or untrue factual statements in the documents and/or reports filed with the SBC courts;
- The policy, custom, and/or practice of suppressing and/or omitting known exculpatory evidence in the documents and/or reports filed with the SBC courts;
- The policy, custom, and/or practice for SWs of including knowingly false and/or unsupported Cal. Welf. & Inst. Code, §300 allegations in juvenile dependency petitions;
- The policy, custom, and/or practice for County Counsel to review and endorse all juvenile dependency petitions;
- The policy, custom, and/or practice of permitting a SW to sign a petition or other court report, under penalty of perjury, without conducting an independent investigation to determine whether the allegations and/or facts stated in the petition, document, and/or report were true;
- The policy, custom, and/or practice of attesting to the veracity of factual statements without personal knowledge as to whether such statements were true or not.
- The policy, custom, and/or practice of permitting a supervisor to sign a detention report, under penalty of perjury, without conducting an independent investigation to determine whether the facts stated in the document, and/or report were true.
- The policy, custom, and/or practice of permitting a supervisor to sign a document and/or court report without personal knowledge as to whether the statements made therein were complete and/or true, in an effort to bolster the credibility of the document, and/or report were true.
- The policy, custom, and/or practice for SW of stating allegations in Juvenile Dependency Petitions, regardless of whether or not specific, articulable evidence exists at the time to support the allegation.

COMPLAINT FOR DAMAGES
50

- The policy, custom, and/or practice of SW and CC of causing the continued detention of a child to be prolonged even though there is no factual basis to support the continued detention of the child.
- The policy, custom, and/or practice for SW of removing and detaining children, and continuing to detain them for an unreasonable period long after any alleged basis for detention is negated or otherwise known to lack merit.
- The policy, custom, and/or practice of putting quotation marks around passages that are not a reproduction of the speaker's words verbatim.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

165.   County of San Bernardino, including by and through its entities CFS and Office of County Counsel and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Social Worker Defendants, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with at total indifference to the rights of affected parents, including Plaintiff herein.

166.   County of San Bernardino knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, cause Plaintiff to be injured and damaged by County of San Bernardino's wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff; and that such policies were the moving force behind the violation of Plaintiffs' constitutional rights as alleged herein above. Namely, Plaintiffs' civil rights were violated, as mentioned above, when Social Worker Defendants and Moret while acting under color of state law and in conformance with official County of San Bernardino policies, conspired and/or acted to seize Plaintiff's children without a warrant; and then lied about Plaintiff in various court reports submitted to the Juvenile Court.

167.   Q.M.'s unwarranted seizure, the warrantless entry and search of Plaintiff's property, and/or County social workers engaging in deception in the presentation of evidence to the SBC courts was not an isolated incident specific to Plaintiff's circumstances or the circumstances of this particular case. Instead, the County and its social workers regularly seize children from their parent's custody without consent, court order, and/or exigency; and/or regularly search properties

COMPLAINT FOR DAMAGES
52

without a warrant; include false statements, and/or suppress known exculpatory evidence, in reports or other documents filed in the SBC courts – as is the customary practice at CFS. These warrantless entries, unlawful seizures, and such deceptive conduct by County social workers has resulted in lawsuits and claims against multiple offending social workers (for violations of constitutional rights) and San Bernardino County (for its customs being the moving force behind these violations). These include, but are not limited to, the following: (1) Mabe v. San Bernardino County Cty. Dep't of Pub. Soc. Servs., 237 F.3d 1101 (9th Cir. 2001) (2) Nicholas Romero v. San Bernardino County filed 03/25/2014 in the Central District of California and later dismissed as fully settled. Yet, the County of San Bernardino has deliberately turned a blind eye to the problems and refrained from taking any reasonable steps to rectify it.

168.   In Mabe, she did not give consent to the officials' warrantless entry into her home, she strongly objected to her child's removal from the home, and insisted that the stepfather told social worker that he was willing to leave the house, to prevent removal of child.

169.   In this case, social worker Bains concurred that she did nothing to prevent the warrantless search of Mrs. McClain's property, Plaintiff also strongly objected to Bains and Carney removing Q.M. from the home, and parents forthwith offered to dispose the cannabis plants to prevent removal of Q.M. from their home.

170.   Several facts, viewed in the light most favorable to the Plaintiff, undermine a reasonable belief of exigency here. First, and most importantly, Bains and Hoffman, at the time of removal, determined physical abuse allegations were unfounded, after interviewing and examining Mrs. McClain's children. Bains told Mother at the end of her interview on December 2, 2016, that she was removing Q.M. for "general neglect" due to presence of cannabis plants being within close access. This demonstrates Bains' intent to remove Q.M. solely due to having close access to live plants, not access to cannabis in any usable form, which raises a serious question about Bains' reasonable belief that Q.M. was in imminent danger on December 2, 2016, similar to the delays in Mabe and Calabretta v. Floyd, 189 F.3d 808 (9th Cir.1999). Assuming that Bains could obtain a warrant the same day as the case review committee recommended that Q.M. be removed, it is difficult to understand how the further delay of a few hours necessary to obtain the warrant would have put Q.M. in imminent danger of serious physical injury. If the county would have learned from the Mabe and Romero lawsuits, Mrs. McClain would not have suffered injuries.

171.   In Romero, Plaintiff's minor sister was not injured and had no bruises on her body.  Mrs. McClain's children also were not injured and had no bruises on their bodies. Yet in both cases CFS and SBCSD employees jointly participated in the removal of children from the custody and care of their Mothers when they did

COMPLAINT FOR DAMAGES
54

not have a warrant. Rogers v. County of San Joaquin, 487 F.3d 1288 (2007). Nor did they have exigent circumstances for taking minors into custody.

172. Defendant County of San Bernardino has engaged in each of the customs and/or practices identified above on an ongoing and continuous basis since at least 2001, if not earlier, and continues to engage in these practices on an ongoing and daily basis.

173. The County of San Bernardino regularly receives and/or is aware of complaints, leveled against its social workers, claiming that the social workers remove children without a warrant and absent exigency, and/or engaging in deception in the presentation of evidence in the SBC courts.

174. The County of San Bernardino never investigates or disciplines its social workers or police officers (including those named as Defendants in the lawsuits identified above) who engage in deception in the presentation of evidence in the SBC courts. The County of San Bernardino consistently fails to investigate or discipline social workers and police officers and their supervisors who are involved in constitutional violations so that violations of citizen's constitutional rights have not only become accepted, but are customary.

175. The County did not investigate or discipline Defendants Bains, Atkinson, or Moret for making false statements, and/or suppressing known exculpatory evidence, in reports, or other documents they filed in the SBC court.

CC did not provide accurate, timely and reliable legal advice to its client CFS, Moret assisted with achieving their objectives.

176.    The County refuses to admit that its social workers and legal representation commit constitutional violation when they make false statements, and/or suppress known exculpatory evidence, in reports, or other documents filed in the SBC court – and continues to do so. The County denies that Defendants Bains, Atkinson, Moret, violated Plaintiffs' rights when they made false statements, and/or suppressed exculpatory evidence, in reports or other documents filed in the SBC court. The County ratified and/or approved the inclusion of false statements, and/or suppression of known exculpatory evidence, in reports or other documents filed in the SBC court.

177.    The Defendant County of San Bernardino is aware that its social workers make false statements and/or suppress known exculpatory evidence, in reports or other documents filed in the SBC court. Yet, Defendant County of San Bernardino made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such conduct, and has consistently and knowingly failed to provide any training to their social workers to inform them of the rights of citizens, parents and children to not be lied about in court reports and the requirement that all exculpatory evidence is presented to the SBC court.

COMPLAINT FOR DAMAGES
56

178.   The Defendant County of San Bernardino's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific conduct alleged herein above, *i.e.*, the known need for a specific policy prohibiting the aforementioned conduct, is itself a "policy" decision which constitutes a policy of deliberate indifference.

179.   This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiffs harm, in that the SW defendants followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures of CFS when they made false statements and/or suppress known exculpatory evidence, in reports or other documents filed in the SBC court – none of which was constitutionally permissible.

180.   Plaintiffs are informed and believe, that Defendant County of San Bernardino failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child, by the First, Fourth, and Fourteenth Amendments. Without such policies, procedures, customs and/or practices in place, the County of San Bernardino SWs were allowed and permitted to engage in conduct that was in violation of Plaintiffs' constitutional rights as more specifically set out in the Statement of Facts above.

181. Defendant County's failure to adopt such policies and training was the moving force behind the violations of Plaintiffs' constitutional rights. Such failures include, but are not limited to:

a. The County of San Bernardino had no written policy, procedure, custom, practice and/or recurrent training delineating the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments.

b. The County of San Bernardino had no written policy, procedure, custom, practice and/or recurrent training instructing that a county social worker and police officer must disclose all known exculpatory evidence to the SBC court.

c. The County of San Bernardino had no written policy, procedure, custom, practice and/or recurrent training instructing that a county social worker and police officer is precluded from including false statements in documents or reports to the SBC Court.

d. The County of San Bernardino had no written policy, procedure, custom, or practice requiring its social workers to be complete, honest, and accurate in their accounts of events leading to the initial detention, or in support of continued detention of a child from its parents.

e. The County of San Bernardino had no written policy, procedure, custom, or practice requiring its social workers and social worker supervisors to have personal knowledge of the facts and/or statements made in a petition, document, and/or report, when attesting to the veracity of those allegations, facts, and/or statements.

COMPLAINT FOR DAMAGES
58

f.    The County of San Bernardino had no written policy, procedure, custom, or practice requiring its social workers and social worker supervisors to conduct an independent investigation to determine whether the allegations, facts, and/or statements in a petition, document, and/or report were true, before attesting to the veracity of those allegations, facts, and/or statements.

g.    The County of San Bernardino had no written policy, procedure, custom, or practice requiring its social workers and social worker supervisors to only use quotation marks when the speaker's words are being reproduced verbatim.

182.    By deliberately refraining from promulgating any of the aforementioned policies, procedures, customs, practices and/or training, the County permitted the aforementioned basic policy decisions to be made by the lower level social workers in the field. As a result, the Defendant County of San Bernardino's policy, custom, and/or practice – as established, adopted, and implemented by the SW Defendants, – was to make false statements and/or suppress known exculpatory evidence in reports and documents filed with the SBC courts, and to continue to detain child or otherwise cause the continued detention of the child even though it was known that there was no factual basis to do so.

183.    These policies, customs, and/or practices – that disregard the Plaintiffs' constitutional protections – were a substantial factor in causing harm to the Plaintiffs. Thus, as a matter of law, because there was no formal policy

COMPLAINT FOR DAMAGES
59

preventing the aforementioned conduct, even though one was obviously needed, the social workers on the line acted on behalf of the County in making final policy decisions – which is exactly what they did when 1) SWs made false statements and/or suppressed known exculpatory evidence in reports and documents filed with the SBC juvenile court, and then continued to detain Q.M. from her father and mother's care for a period over 15 months even though they knew there was no legitimate basis to do so.

184. The state of the law regarding the constitutional protections afforded to the people by the First, Fourth, and Fourteenth Amendments was clearly established well before December 2016. As such, the Defendant County of San Bernardino knew before 2016 that its county social workers are required recurrent training on the constitutional protections afforded to citizens of United States.

185. The state of the law regarding the constitutional protections afforded to the people by the First, and Fourteenth Amendments was clearly established well before December 2016. As such, the Defendant County of San Bernardino knew before 2016 that its county social workers and CC are required recurrent training on the constitutional protections afforded to citizens of United States.

186. Despite this knowledge, the Defendant County of San Bernardino deliberately failed to train or, alternatively, deliberately failed to provide recurrent

COMPLAINT FOR DAMAGES
60

and updated training to its county social workers, and/or legal representation, on the following constitutional protections:

    a.    That a social worker or police officer must disclose all known exculpatory evidence to the SBC court.

    b.    That a social worker or CC must be truthful, honest, and accurate when reporting and/or presenting evidence to the SBC court.

    c.    That a social worker is precluded from lying to and/or including false statements in documents or reports to the SBC court.

    d.    That a social worker must disclose all known exculpatory evidence in documents and/or reports that will be relied upon by subsequent social workers.

    e.    That a social worker is precluded from lying to and/or including false statements in documents and/or reports that will be relied upon by subsequent social worker.

    f.    That quotation marks can only be used when the speaker's words are being reproduced verbatim.

187.    The Defendant County of San Bernardino deliberate failure to train its county SWs and police officers on these established constitutional protections was a substantial factor in causing the Plaintiffs' harm, in that CFS and SBCSD agents working for the Defendant County of San Bernardino were unfamiliar with and oblivious to the Plaintiffs' constitutional rights, when the County's SWs, police officers, deputy CC, and/or agents 1) SWs made false statements and/or suppressed known exculpatory evidence in reports and documents filed with the SBC juvenile court, and then continued to detain Q.M. from her father and mother's care for a

period over 15 months even though they knew there was no legitimate basis to do so.

188. The practice of turning a deliberate blind eye to the need for further or adequate training by ignoring repeated violations of the rights of children and parents with whom CFS agents can regularly be expected to come into contact by failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

189. These actions, and/or inactions, of County of San Bernardino are the moving force behind, and direct and proximate cause of Plaintiffs' injuries, as alleged herein. As a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial.

190. County of San Bernardino is vicariously responsible for the conduct of its CFS Social Worker and Sheriff Department Police Officer Defendants, under California Government Code section 815.2 and other applicable statutory and case law.

## COUNT 2

COMPLAINT FOR DAMAGES

62

**By All Plaintiff against County of San Bernardino; SBCSD Police Defendants, inclusive**

191.    Plaintiffs re-allege, adopt. and incorporates as if set forth at length, and to the extent applicable, paragraphs 1 through 106.

192.    Defendant County of San Bernardino, including through its Hesperia Police Department/SBCSD entity, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability. *Monell v. Dept. of Social Services* (1978) 436 U.S.

193.    Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiffs' rights.

194.    Defendant San Bernardino County, including through its entity SBCSD, and those Defendants sued in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff Mrs. McClain, at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiffs under the United States Constitution, including those under the First, Second, Fourth, and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized; the right to be secure; the right

COMPLAINT FOR DAMAGES
63

to bear arms; the right to procedural due process; and the rights to equal protection clause.

195.    Said defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within SBCSD, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

196.    Moreover, based on the duties charged to SBCSD, including the nature of its work relating to juvenile dependency matters, the powers to seize people and property, and the responsibility, to present evidence and recommendations to the superior courts – courts with power to adjudicate substantial rights, including legal and custodial rights of children and parents, and legal and equal rights to privacy.

197.    SBCSD knew or should have known of the obvious need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children with whom their officers regularly came into contact – and to adequately train its employee police officers on constitutionally appropriate policies and practices.

COMPLAINT FOR DAMAGES
64

198.    Defendant County of San Bernardino established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by the Police Officer defendants when they violated Plaintiff's constitutional rights by; searching Plaintiff's house without a warrant; seizing Plaintiff without a warrant; engaging in deception in the presentation of evidence to the SBC courts; and assisting with the seizure of Q.M. from Plaintiff's care and custody without first obtaining a warrant where the child was in no danger of suffering severe bodily injury or death in the time it would have taken to obtain a warrant, among other things.

199.    In addition, Defendant County of San Bernardino established, adopted, followed, implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by the Police officer defendants when they violated Plaintiff's constitutional rights by taking into custody Plaintiff, and/or by causing Plaintiff to be separated from her family, when it was known that there was no basis to do so; and causing Plaintiff to be incarcerated in HDDC and WVDC for over twenty-four hours before being released and not having been taken before a magistrate; and by seizing Mrs. MCCLAIN's registered gun without serving a warrant, describing the place to be searched, and persons or things to be seized.

COMPLAINT FOR DAMAGES
65

200.   At the time of the underlying events, the regularly established customs and practices of the County of San Bernardino's Sheriff Department that were followed, adhered to, complied with, and carried out by Police officer defendants, each of them, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiffs' constitutional rights include, but not limited to:

- The policy, custom, and/or practice of detaining and/or removing children from the custody of their parents in the absence of exigent circumstances (immediate danger of serious bodily injury), without first obtaining a court order/warrant and/or first obtaining consent of the child's parent;

- The policy, custom, and/or practice of removing children from their parent's custody without consent, court order, and/or exigency, based purely on speculative harm;

- The policy, custom, and/or practice of seizing a child from the custody of its parents – without judicial authorization or parental consent – when cannabis is protected by the CA Compassionate Use Act and supported by Health and Safety Code §11362.5;

- The policy, custom, and/or practice of removing a child from the custody of its parent(s) – without judicial authorization or parental consent – due to children in close access to cannabis cultivation protected by CA Compassionate Use Act and supported by Health Safety Code §11362.5;

- the policy of execution of search and seizure warrants, including entering homes and seizing persons or properties, without probable cause for believing imminent harm, furthermore obtaining search warrants with false statements, in violation of the warrant clause; and

- the policy of arresting citizens of the United States without a warrant absent probable cause – or authorizing, encouraging, directing, or assisting other officers with an unlawful arrest to people or procure the

COMPLAINT FOR DAMAGES
66

unlawful arrest without process; or participated in the unlawful arrest of people without a warrant.

- The policy, custom, and/or practice of including false, inaccurate, exaggerated, misleading, and/or untrue factual statements in the documents and/or reports filed with the SBC courts.
- The policy, custom, and/or practice of suppressing and/or omitting known exculpatory evidence in the documents and/or reports filed with the SBC courts.
- The policy, custom, and/or practice of attesting to the veracity of factual statements without personal knowledge as to whether such statements were true or not.
- The policy, custom, and/or practice of permitting a police officer to sign a Search Warrant and Affidavit, Probable Cause declaration, or other court report, under penalty of perjury, without conducting an independent investigation to determine whether the allegations and/or facts stated in the Search Warrant and Affidavit, Probable Cause, document, and/or report were true.
- The policy, custom, and/or practice of permitting a police officer to sign a crime report, under penalty of perjury, without conducting an independent investigation to determine whether there was sufficient evidence to support the allegations stated therein.
- The policy, custom, and/or practice of police officer of causing the continued incarceration of citizens to be prolonged even though there is no factual basis to support the continued incarceration.
- The policy, custom, and/or practice of police officer of causing the continued or unnecessary charges against citizens to be prolonged even though there is no factual basis to support the continued or unnecessary charges.

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type

COMPLAINT FOR DAMAGES

67

proceedings. Plaintiffs may seek leave to amend this pleading as more information becomes available.)

201.    When Defendants agreed to search, participated in the search, and/or searched Plaintiffs' house and garage, they were each acting pursuant to and in accordance with the County's examination of people and property customs. Indeed, the search of Plaintiff's house received SBCSD supervisor approval. Defendants, Hoffman, Sandoval, Gomez, Johnston, Watson, Bernal, Gary, conduct was known to and approved by each of the Defendant Police officers' supervisors.

202.    When Defendants Johnston, Bernal, Sandoval, Gomez, And Hoffman engaged in deception in the presentation of evidence to the SBC courts, they were acting pursuant to and in accordance with the County's customs and/or practices. Indeed, the reports, Affidavit, and/or other documents, filed with the SBC Courts, were reviewed and approved by a SBCSD supervisor. Hoffman ordered Johnston to obtain a warrant after the search concluded.

203.    Plaintiff's unwarranted seizure, the unreasonable search of Plaintiff's property, and/or County police officers engaging in deception in the presentation of evidence to the SBC courts was not an isolated incident specific to Plaintiff's circumstances or the circumstances of this particular case. Instead, the County and its police officers regularly arrest citizens without a warrant and/or absent probable cause, – as is the customary practice at SBCSD, police officers include false

COMPLAINT FOR DAMAGES
68

statements, and/or suppress known exculpatory evidence, in reports or other documents filed in the SBC courts. Such deceptive conduct, unreasonable searches, unlawful seizures and/or arrests have resulted in lawsuits and claims against multiple offending SBCSD police officers (for violations of constitutional rights) and San Bernardino County (for its customs being the moving force behind these violations). These include, but are not limited to, the following: (1) *Trent v. County of San Bernardino*, U.S. District Court (Riverside) 2013 fully settled $600,000.00 settlement for unreasonable force and unlawful seizure of; (2) *Romero v. San Bernardino County* U.S. District Court (Riverside) (2014) dismissed as fully settled; Yet, the County of San Bernardino has deliberately turned a blind eye to the problems and refrained from taking any reasonable steps to rectify it.

204.   In Trent, Plaintiff claimed SBCSD employees unlawfully entered and searched her home after all exigency seized to exist. As well as, police officer defendants obtained a search warrant using materially false statements and/or omitting exculpatory information, after the unlawful entry and search and after Plaintiff was false imprisoned. Trent further claimed the search warrant was obtained and executed in attempts to "cover their butts".

205.   In this case, Mrs. McClain also claims SBCSD obtained a search warrant after the unlawful entry, search, and arrest commenced. Although SBCSD defendants did not return to Mrs. McClain's residence like with Trent, they still

obtain the warrant to "cover their butts"; filed with the SBC superior court in attempts to manipulate the court; when they knew the warrant was void.

206. In Romero, Plaintiff's minor sister was not injured and had no bruises on her body. Mrs. McClain's children also were not injured and had no bruises on their bodies. Yet in both cases CFS and SBCSD employees jointly participated in the removal of children from the custody and care of their Mothers, and searched the homes, when they did not have a warrant. Rogers v. County of San Joaquin, 487 F.3d 1288 (2007). Nor did they have exigent circumstances for taking minors into custody.

207. Defendant County of San Bernardino has engaged in each of the customs and/or practices identified above on an ongoing and continuous basis since at least 2013 if not earlier, and continues to engage in these practices on an ongoing and daily basis.

208. The County of San Bernardino regularly receives and/or is aware of complaints, leveled against its police officers, claiming that the police officers arrest people without a warrant, and/or absent probable cause, or claim police officers engage in deception in the presentation of evidence in the SBC courts.

209. The County of San Bernardino never investigates or disciplines its police officers who arrest people without a warrant, and/or absent probable cause, and/or unreasonably search people and property without a warrant, and/or who

engage in deception in the presentation of evidence in the SBC courts. The County of San Bernardino consistently fails to investigate or discipline social workers and police officers and their supervisors who are involved in constitutional violations so that violations of citizen's constitutional rights have not only become accepted, but are customary.

210.   The County did not investigate or discipline Defendants Johnston, Bernal, Sandoval, Gomez, and Hoffman for making false statements, and/or suppressing known exculpatory evidence, in reports, or other documents they filed in the SBC court.

211.   The county did not investigate or discipline Defendants Wielenga, Hoffman, Sandoval, Johnston, Gary, Watson, Gomez, Bernal, for searching Plaintiff's house and garage without a warrant, consent, and/or probable cause.

212.   The County did not investigate or discipline Defendants Hoffman, Sandoval, and Bernal for participating in the removal of, Q.M. without consent, court order, and/or exigency.

213.   The County did not investigate or discipline Defendants Hoffman, Sandoval, Johnston, Gary, Watson, Gomez, And Bernal for arresting, or participating in the arrest of Plaintiff without a warrant and/or probable cause.

214.   The County refuses to admit that its police officers commit a constitutional violation when they search people and their property without

COMPLAINT FOR DAMAGES

71

consent, court order, and/or probable cause. The County denies that Defendants Wielenga, Hoffman, Sandoval, Johnston, Gary, Watson, Gomez, Bernal, violated Plaintiff's rights when Plaintiff's property was searched without consent, court order, and/or probable cause. The County ratified and/or approved of the unreasonable search.

215. The County refuses to admit that its police officers commit a constitutional violation when they assisted with the removal a child from his or her parent's custody without consent, court order, and/or exigency. The County denies that Defendants Hoffman, Sandoval, and Bernal violated Plaintiff's rights when Q.M. were seized without consent, court order, and/or exigency. The County ratified and/or approved of Q.M. unwarranted removal.

216. The County refuses to admit that its police officers commit a constitutional violation when they unlawfully and/or falsely arrest citizens of the United States. The County denies that Defendants Hoffman, Sandoval, Johnston, Gary, Watson, Gomez, and Bernal integrally participated and violated Plaintiff's rights when Plaintiff was taken into custody without a warrant, and/or probable cause. The County ratified and/or approved of Plaintiff's unwarranted arrest.

217. The County refuses to admit that its police officers commit constitutional violation when they make false statements, and/or suppress known

exculpatory evidence, in reports, or other documents filed in the SBC court – and continues to do so.

218. The County denies that Defendants Johnston, Bernal, Gary, Sandoval, Gomez, and Hoffman, violated Plaintiff's rights when they made false statements, and/or suppressed exculpatory evidence, in reports or other documents filed in the SBC court. The County ratified and/or approved the inclusion of false statements, and/or suppression of known exculpatory evidence, in reports or other documents filed in the SBC courts. Plaintiff filed California Tort April 07, 2017 and San Bernardino County denies remedy May 30, 2017. See exhibit

219. The Defendant County of San Bernardino is aware that police officers make false statements and/or suppress known exculpatory evidence, in reports or other documents filed in the SBC court. Yet, Defendant County of San Bernardino made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such conduct, and has consistently and knowingly failed to provide any training to their police officers to inform them of the rights of citizens, parents and children to not be lied about in court reports and the requirement that all exculpatory evidence is presented to the SBC court.

220. The Defendant County of San Bernardino is also aware that its police officers assist with seizing children from the care of their parents without first obtaining judicial authorization, parental consent, and/or pursuing reasonable

COMPLAINT FOR DAMAGES

73

avenues of investigation, and/or taking in to custody citizens without first obtaining judicial authorization, and/or pursuing reasonable avenues of investigation when there is no probable cause and in contravention of the rights of both parents and children, and citizens of the United States. Yet, Defendant County of San Bernardino made a knowing and conscious decision to refrain from promulgating a policy and recurrent training to prevent such conduct, and has consistently and knowingly failed to provide any training to their police officers to inform them of constitutional laws and the rights of parents and children, to remain together absent undue government interference, the obligation of the social workers and police officers to first obtain a warrant before seizing children from their parents when no exigency exists; to inform police officers of the rights of the people to be secure in their houses, against unreasonable searches; to inform police officers of the rights of the people to be secure in their houses, against unwarranted seizures.

221. The Defendant County of San Bernardino's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific conduct alleged herein above, *i.e.*, the known need for a specific policy prohibiting the aforementioned conduct, is itself a "policy" decision which constitutes a policy of deliberate indifference.

222.   This policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff's harm, in that the Police Officer defendants followed and acted pursuant to the regularly established customs practices, and well known and accepted standard operating procedures of SBCSD when they searched Plaintiff's home and garage without judicial authorization, Plaintiff's consent, and without specific articulable facts that warranted the intrusion; and/or participation with seizure of Q.M. from her Parent's custody and care without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child was in immediate risk of suffering serious bodily injury; and taking into custody Plaintiff without a warrant, and/or probable cause, and without process, and without knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that Plaintiff had committed a crime. – none of which was constitutionally permissible.

223.   Plaintiffs are informed and believe, that Defendant County of San Bernardino failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child, by the First and Fourteenth Amendments. Without such policies, procedures, customs and/or practices in place, the County of San Bernardino Police Officers were

COMPLAINT FOR DAMAGES

75

allowed and permitted to engage in conduct that was in violation of Plaintiff's constitutional rights as more specifically set out in the Statement of Facts above.

224. Defendant County's failure to adopt such policies and training was the moving force behind the violations of Plaintiff's constitutional rights. Such failures include, but are not limited to:

- The County of San Bernardino had no written policy, procedure, custom, practice and/or training regarding the circumstances under which a social worker or police officer must obtain judicial authorization prior to removing a child from the custody of its parent(s) due to a cannabis cultivation that is protected by CA Compassionate Use Act and supported by Health Safety Code §11362.5.
- The County of San Bernardino had no written policy, procedure, custom, practice and/or training requiring a county police officer to obtain judicial authorization prior to assisting with the removal of a child from the custody of its parent(s), when there was no evidence that the child was in immediate risk of suffering serious bodily injury at the hands of its parent(s).
- The County of San Bernardino had no written policy, procedure, custom, practice and/or required recurrent training of its police officers delineating the constitutional protections afforded to a parent and child by the First, Fourth, and Fourteenth Amendments.
- The County of San Bernardino had no written policy, procedure, custom, practice and/or required recurrent training of its police officers to instruct them that they must possess "specific, articulable evidence" that a child would be placed at immediate risk of suffering serious harm at the hands of the parent(s), prior to removing the child from its parent's custody without judicial authorization.
- The County of San Bernardino had no written policy, procedure, custom, practice and/or recurrent training instructing that a county social worker and police officer must disclose all known exculpatory evidence to the SBC court.

COMPLAINT FOR DAMAGES

76

- The County of San Bernardino had no written policy, procedure, custom, practice and/or recurrent training instructing that a county social worker and police officer is precluded from including false statements in documents or reports to the SBC Court.
- The County of San Bernardino had no written policy, procedure, custom, or practice requiring its police officers and police officer supervisors to have personal knowledge of the facts and/or statements made in a crime report, warrant affidavit, probable cause declaration, and/or report, when attesting to the veracity of those allegations, facts, and/or statements.
- The County of San Bernardino had no written policy, procedure, custom, or practice requiring its police officers to be complete, honest, and accurate in their accounts of events leading to the arrests, or in support of continued incarceration of citizens.
- The County of San Bernardino had no written policy, procedure, custom, or practice requiring its police officer and police officer supervisors to conduct an independent investigation to determine whether the allegations, facts, and/or statements in a crime report, warrant affidavit, probable cause declaration, and/or reports, were true, before attesting to the veracity of those allegations, facts, and/or statements.

225.   By deliberately refraining from promulgating any of the aforementioned policies, procedures, customs, practices and/or training, the County permitted the aforementioned basic policy decisions to be made by the lower level police officers in the field. As a result, the Defendant County of San Bernardino's policy, custom, and/or practice – as established, adopted, and implemented by San Bernardino County Sheriff's Department; Wielenga, Hoffman, Johnston, Gomez, Sandoval, Bernal, and Gary, the Police officer Defendants, – was to make false statements and/or suppress known exculpatory

COMPLAINT FOR DAMAGES
77

evidence in reports and documents filed with the SBC courts, unreasonably search plaintiff's property, detain plaintiff, and to continue to detain plaintiff or otherwise cause the continued detention of the Plaintiff even though it was known that there was no factual basis to do so.

226. These policies, customs, and/or practices – that disregard the Plaintiff's constitutional protections – were a substantial factor in causing harm to the Plaintiff. Thus, as a matter of law, because there was no formal policy preventing the aforementioned conduct, even though one was obviously needed, the police officers on the line acted on behalf of the County in making final policy decisions – which is exactly what they did when 1) they searched Plaintiff's home and garage without consent, warrant, and/or without probable cause, 2) they arrested Plaintiff without a warrant, and/or probable cause, 3) they made false statements and/or suppressed known exculpatory evidence in reports and documents filed with the SBC criminal court, and continued to incarcerate Plaintiff, for over 24 hours, even though they knew there was no legitimate reason to do so.

227. The state of the law regarding the constitutional protections afforded to the people by the First, Fourth, and Fourteenth Amendments was clearly established well before December 2016. As such, the Defendant County of San

COMPLAINT FOR DAMAGES
78

Bernardino knew before 2016 that its county police officers are required recurrent training on the constitutional protections afforded to citizens of United States.

228.    Despite this knowledge, the Defendant County of San Bernardino deliberately failed to train or, alternatively, deliberately failed to provide recurrent and updated training to its county social workers and/or police officers on the following constitutional protections:

a.    the County of San Bernardino did not provide recurrent training to its county Police officers regarding the circumstances under which judicial authorization must be obtained prior to removing a child from the custody of its parent(s).

b.    The County of San Bernardino did not provide recurrent training to its county police officers regarding the fact that judicial authorization must be obtained prior to removing a child from the custody of its parent(s), when there was no evidence that the child was in immediate risk of suffering serious bodily injury.

c.    The County of San Bernardino did not provide recurrent training to its county police officers regarding the fact that the removal of a child, without prior judicial authorization, cannot be based solely on speculative harm.

d.    The County of San Bernardino did not provide recurrent training to its county police officers regarding the fact that the removal of a child, without prior judicial authorization, cannot be based solely on the fact that cannabis plants are present and not in unusable form, and protected by State law.

e.    The County of San Bernardino did not provide recurrent training to its county police officers regarding the circumstances under which judicial authorization must be obtained prior to searching persons, houses, papers and effects.

h.    The County of San Bernardino did not provide recurrent training to its county police officers regarding the fact that judicial authorization

COMPLAINT FOR DAMAGES

79

must be obtained prior to taking a person into custody, when there was no knowledge and reasonably trustworthy information of facts and circumstances sufficient to believe that [the arrestee] had committed or was committing a crime.

i. That a police officer must disclose all known exculpatory evidence to the SBC court.

b. That a police officer must be truthful, honest, and accurate when reporting and/or presenting evidence to the SBC court.

c. That a police officer is precluded from lying to and/or including false statements in documents or reports to the SBC court.

e. That a police officer is precluded from lying to and/or including false statements in documents and/or reports that will be relied upon by subsequent police officers.

229. The Defendant County of San Bernardino deliberate failure to train its county police officers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that SBCSD agents working for the Defendant County of San Bernardino were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the County's police officers, 1) they searched Plaintiff's home and garage without consent, warrant, and/or without probable cause, 2) they arrested Plaintiff without a warrant, and/or probable cause, 3) made false statements and/or suppressed known exculpatory evidence in reports and documents filed with the SBC criminal court, and continued to incarcerate Plaintiff, for over 24 hours, even though they knew there was no legitimate reason to do so.

COMPLAINT FOR DAMAGES
80

230.   The practice of turning a deliberate blind eye to the need for further or adequate training by ignoring repeated violations of the rights of children and parents with whom SBCSD agents can regularly be expected to come into contact by failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or failing to train and/or supervise its officers, agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

231.   Defendant County of San Bernardino, including by and through its entities SBCSD, and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and proper constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and/or employees as to their compliance with constitutional safeguards; and by deliberately permitting the Police Officer DEFENDANTS, to engage in the unlawful and unconstitutional conduct as herein alleged, with a total and deliberate indifference to the rights of affected parents, including Plaintiff.

232.   Defendant County of San Bernardino knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages

would, and did, directly cause Plaintiffs to be injured and damaged by Defendant County of San Bernardino's wrongful practices, or deliberate lack of official policies to prevent the known practices from occurring.

233.    These actions, and/or inactions, of the Defendant County of San Bernardino were the moving force behind, and direct and proximate cause of Plaintiff's injuries. As a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial.

234.    County of San Bernardino is vicariously responsible for the conduct of its CFS Social Worker and Sheriff Department Police Officer Defendants, under California Government Code section 815.2 and other applicable statutory and case law.

## VI.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff Briesa McClain prays for judgement against Defendants, as to all causes of action, as follows:

1.    General damages and special damages according to proof, but in no event less than $9,999,999;

2.    As against only the individual defendants and not any municipality, punitive damages as allowed by law;

3.    Attorney fees and costs pursuant to 42. U.S.C § 1988, and any other appropriate statute;

4.    Injunction relief, both preliminary and permanent, as allowed by law, (including preliminary injunction relief to be based upon separate application);

5.    Cost of suit incurred herein; and

6.    Such further relief as the Court deems just and proper.

Dated this 7th day of August 2018.

_____
Briesa McClain, Plaintiff in Pro Se

**DEMAND FOR JURY TRIAL**

Plaintiff, Briesa McClain, demands a jury trial as to all issues so triable.

Dated this 7th day of August 2018.

_____
Briesa McClain, Plaintiff in Pro Se

# EXHIBIT "A"

# EXHIBIT "A"

Page 84

222 W. Hospitality Lane, Third Floor, San Bernardino, CA 92415 | Phone: 909.386.8655  Fax: 909.382-3212

**SAN BERNARDINO**
**COUNTY**

**Department of**
Risk Management

Kenneth L. Hernandez
Director

April 14, 2017

Briesa McClain
PO Box 580214
N Palm Springs, CA 92258

RE:    Claimant................ Briesa McClain
       Date of Loss............December 2, 2016
       Our File..................125601

Dear Briesa McClain:

We are in receipt of your claim against the County of San Bernardino and are currently investigating the circumstances surrounding your claim.  A decision regarding the County's liability will be made upon completion of the investigation or within 45 days of our receipt of your claim.

If you have any questions, please contact me at (909) 386-8637.

Respectfully,

Richard Castanon
Liability Claims Rep III
DEPARTMENT OF RISK MANAGEMENT

Page 85

Receipt of claim letter

BOARD OF SUPERVISORS

ROBERT A. LOVINGOOD        JANICE RUTHERFORD        JAMES RAMOS        CURT HAGMAN                        JOSIE GONZALES
Chairman, First District    Second District          Third District     Vice Chairman, Fourth District    Fifth District

222 W. Hospitality Lane, Third Floor, San Bernardino, CA 92415 | Phone: 909.386 8655   Fax: 909.382-3212



**SAN BERNARDINO COUNTY**

**Department of**
**Risk Management**

Kenneth L. Hernandez
Director

May 30, 2017

Joaquin and Briesa McClain
PO Box 580214
N Palm Springs, CA 92258

**RE:**   Claimant............... Briesa McClain
Date of Loss............December 2, 2016
Amount of Claim...... Undetermined
Our File................. 125601

Notice is hereby given that the claim which you presented to the County of San Bernardino on April 7, 2017 was rejected on May 30, 2017.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Richard Castanon
Liability Claims Rep III
DEPARTMENT OF RISK MANAGEMENT
(909) 386-8637

Page 86

BSWARa

BOARD OF SUPERVISORS

ROBERT A. LOVINGOOD       JANICE RUTHERFORD       JAMES RAMOS       CURT HAGMAN       JOSIE GONZALES
Chairman, First District   Second District        Third District    Vice Chairman, Fourth District   Fifth District